| | |
|---|---|
| JAY BROWNLOW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:18-cv-01241 |
| | ) |
| ALFA VISION INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The world was a much different place in 2016 and 2017, particularly when it comes to employees working remotely. This case requires the Court to travel back to that pre-COVID-19 world and address Jay Brownlow's allegations that his former employer Alfa Vision Insurance Company ("Alfa") retaliated against him and failed to accommodate his disability by not letting him work from home. Before the Court is Alfa's Motion for Summary Judgment (Doc. No. 42) and Brownlow's Motion for Partial Summary Judgment (Doc. No. 45), which have been fully briefed by the parties (see Doc. Nos. 43, 47, 59, 65, 67, 71). For the following reasons, Alfa's motion will be granted in part and Brownlow's motion will be denied.

**I.  BACKGROUND AND UNDISPUTED FACTS[1]**

Brownlow worked for Alfa, an automobile insurance company, in various capacities before returning to work in the company's Brentwood, Tennessee office in July 2014. (Doc. No. 60 at 2–

---

[1] The facts in this section are undisputed unless noted otherwise and are drawn from the undisputed portions of the parties' statements of facts (Doc. Nos. 60, 66, 68), the exhibits and depositions submitted in connection with the summary judgment briefing, and portions of the Complaint (Doc. No. 1) that are not contradicted by the evidence in the record. For ease of reference, the Court will cite to both the page and paragraph numbers in Defendant's Response to Plaintiff's Concise Statement of Undisputed Facts in Support of Partial Summary Judgment (Doc. No. 60) because

3 ¶¶ 1, 3; Doc. No. 66 at ¶ 1). Brownlow's job duties were "primarily [to] write original and supplemental estimates for property damage claims under automobile policies by reviewing photographs of damaged vehicles." (Doc. No. 66 ¶ 6; Doc. No. 44-3 at 58:17–59:23). However, the parties disagree about whether Brownlow's job title was "inside claims adjuster"[2] or "outside claims adjuster." (Doc. No. 60 at 3 ¶ 3; Doc. No. 66 ¶ 5). And because the written job description for both of those jobs was the same, there is also a dispute about whether they are in fact different positions. (Doc. No. 68 ¶¶ 1, 2; see also Doc. No. 48-10 at 23–26). The parties also disagree about whether in-office attendance was required for *inside* adjusters but agree that Alfa regularly permitted *outside* claims adjusters to work remotely. (See Doc. No. 68 ¶¶ 1–5).

As a result of childhood trauma involving sexual abuse and witnessing his cousin die in a car accident, Brownlow was diagnosed with several ongoing medical conditions including major depressive disorder, post-traumatic stress disorder ("PTSD"), anxiety, and mood swings. (Doc. No. 60 at ¶ 2; see also Doc. No. 48-4 at 12–14). Brownlow's doctors prescribed him anti-depressants, anti-anxiety, and mood stabilizing medications to treat and control his medical conditions, although they sometimes changed Brownlow's medication in search of the optimum combination and dosage for him. (Doc. No. 60 at 12 ¶ 6). In late 2014, Brownlow asked his supervisor Mike Ladd if he could "work from home, as needed, during a change in medication," but Brownlow never received a response to this request. (Doc. No. 60 at 3–4 ¶ 4; Doc. No. 44-4 at 78).

---

that document references several paragraphs with identical numbers. Last, the Court has omitted some facts that relate solely to Brownlow's Title VII claims because, as explained in Section III.A *infra*, Brownlow concedes that those claims should be dismissed.

[2] The parties use the words "adjuster" and "appraiser" interchangeably, and there does not appear to be any meaningful difference between the two.

At some point in late 2015 and early 2016, Brownlow alleges that his co-workers exchanged crude jokes and sexual imagery in private text messages, which he found particularly offensive given his childhood trauma. (Doc. No. 60 at 4 ¶ 5; Doc. No. 66 at ¶¶ 16–17). Because these jokes were exacerbating his PTSD, anxiety, and depression, Brownlow tried to escape the Brentwood office and applied for another position in Alfa's Trussville, Alabama office in December 2015 as an accommodation for his ongoing disabilities. (Doc. No. 66 at ¶¶ 23–24; Doc. No. 60 at 6–7 ¶ 8). Alfa did not select Brownlow for this available position. (Doc. No. 60 at 6–7 ¶ 8; see also Doc. Nos. 44-4 at 78; 44-5 at 8).

In May 2016, Brownlow again asked if he could work from home because his doctors made changes to his prescribed medication that prevented him from driving to the office. (Doc. No. 66 at ¶ 34; Doc. No. 60 at 8 ¶ 10). Alfa granted Brownlow's requested accommodation and allowed him to work from home temporarily starting on May 19, 2016. (Doc. No. 66 ¶ 35; Doc. No. 60 at 8 ¶ 10). The parties dispute whether Brownlow adequately performed his job duties while working remotely. (See Doc. No. 66 at ¶¶ 36–38; Doc. No. 60 at 8–9 ¶ 10).

On August 11, 2016, Susie White, a Manager in Alfa's Human Resources department, requested updated medical documentation from Brownlow about his status and when he would potentially return to the office. (Doc. No. 66 ¶ 39; Doc. No. 44-5 at 70). Brownlow's physician submitted a letter on September 29, 2016, stating that Brownlow "continues to have issues with medication adjustments" and recommending that he be able to continue working from home. (Doc. No. 44-6 at 5). In November 2016, Brownlow applied for and received intermittent leave under the Family Medical Leave Act ("FMLA").[3] (Doc. No. 66 ¶ 40).

---

[3] Under the FMLA, "qualifying employees" are entitled "to up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the

3

On February 24, 2017, Ladd informed Brownlow that because his job "has never been considered a 'work from home' position," he could no longer work from home indefinitely. (Doc. No. 44-6 at 11; see also Doc. No. 66 at ¶ 41). Ladd further instructed Brownlow that he had to either return to the office by March 27, 2017 (after receiving a full medical release from his doctor) or receive additional FMLA leave. (Doc. No. 44-6 at 11). Brownlow opted for additional FMLA leave, which he exhausted on May 10, 2017. (Doc. No. 66 ¶ 42; Doc. No. 44-6 at 36). Brownlow then applied for and received long-term disability benefits starting on May 29, 2017. (See Doc. No. 66 at ¶ 42 n.6 (citing Doc. No. 44-6 at 16–17)).

Brownlow continued experiencing issues with his medication after his FMLA leave expired, and he could not receive a doctor's release to return to the office. (Doc. No. 60 at 10–11 ¶ 12; see also Doc. No. 44-6 at 35). On June 13, 2017, Alfa notified Brownlow that because he did not provide a "written certification from a health care professional that [he] can return to work" in the office, Alfa considered Brownlow to have abandoned his job and would no longer hold his position open. (Doc. No. 60 at 10–11 ¶ 12; see also Doc. No. 44-6 at 37).

Brownlow filed a Charge of Discrimination with the Tennessee Human Rights Commission on December 1, 2017, and the Equal Employment Opportunity Commission ("EEOC") issued Brownlow a Notice of Right to Sue on August 8, 2018. (Doc. No. 68 ¶ 7; see also Doc. Nos. 1-2; 1-3). Brownlow then filed this lawsuit on November 5, 2018, alleging that Alfa discriminated and retaliated against him in violation of Title VII and the ADA. Both parties have now moved for summary judgment on the issue of liability.

---

employee unable to perform the functions of the position of such employee.'" Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005) (quoting 29 U.S.C. § 2612(a)(1)(D)).

## II. LEGAL STANDARD

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Peffer v. Stephens, 880 F.3d 256, 262 (6th Cir. 2018) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted). "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." Id. (citation and internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). "And where, as here, the parties filed cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" McKay v. Federspiel, 823 F.3d 862, 866 (6th Cir. 2016) (quoting Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991)). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson, 477 U.S. at 249. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. Rodgers, 344 F.3d at 595.

## III. ANALYSIS

The parties filed competing motions for summary judgment on Brownlow's claims for gender discrimination under Title VII (Count I), failure to accommodate under the ADA (Count II), and retaliation under both Title VII and the ADA (Count III). The Court will address each of these counts below.

### A. Title VII Claims

In response to Alfa's motion, Brownlow concedes that his discrimination and retaliation claims under Title VII should be dismissed. (Doc. No. 65 at 1 n.1). Accordingly, the Court will grant Alfa's unopposed motion for summary judgment as to Brownlow's Title VII gender discrimination claim (Count I) and Title VII retaliation claim (Count III).

### B. ADA Failure to Accommodate Claim

In Count II, Brownlow alleges that Alfa violated the ADA and discriminated against him because of his disability by refusing to accommodate his request to work remotely. (Compl. ¶ 25). The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability" in regard to the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, "discrimination includes a failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" Brumley v. United Parcel Serv., Inc., 909 F.3d 834, 839 (6th Cir. 2018) (quoting 42 U.S.C. § 12112(b)(5)(A)). Because failure-to-accommodate claims "'necessarily involve direct evidence . . . of discrimination[,]' the familiar McDonnell-Douglas burden-shifting framework (applicable to claims premised on indirect evidence) . . . does not apply." Id. (quoting Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 868–69 (6th Cir. 2007)).

To establish a prima facie claim for failure to accommodate under the ADA, Brownlow must show that: (1) he is disabled within the meaning of the Act; (2) he is otherwise qualified for his position, with or without reasonable accommodation; (3) Alfa knew or had reason to know about his disability; (4) he requested a reasonable accommodation; and (5) Alfa failed to provide the necessary accommodation. Id.; see also Johnson v. Cleveland City School Dist., 443 F. App'x 974, 982–83 (6th Cir. 2011). If Brownlow can make this showing using direct evidence, then the burden shifts to Alfa to prove that the proposed accommodation would impose an undue hardship on the operation of Alfa's business. Brumley, 909 F.3d at 839 (citing Kleiber, 485 F.3d at 868–69).

Here, there is no dispute that Brownlow is disabled within the meaning of the ADA (element 1), Alfa knew about his disability (element 3), and Alfa refused to provide Brownlow's requested accommodation (element 5) of continuing to work from home. (See Doc. No. 43 at 6 n.1). Thus, the only remaining issues in dispute are: (1) whether Brownlow is otherwise qualified for his position with or without a reasonable accommodation; and (2) whether Brownlow's requested accommodation was in fact reasonable.

### 1. Otherwise Qualified

Under the ADA, an employee is "otherwise qualified" for a position if he can perform the "essential functions" of his job with or without a reasonable accommodation. See Rorrer v. City of Stow, 743 F.3d 1025, 1038 (6th Cir. 2014) (quoting 42 U.S.C. § 12111(8)). "Essential functions are 'the fundamental job duties of the employment position the individual with a disability holds or desires.'" Id. at 1039 (quoting 29 C.F.R. § 1630.2(n)(1)). In determining whether a job function is essential, Courts may consider the following factors: "(1) the employer's judgment [as to which functions are essential]; (2) the written job description; (3) the amount of time spent performing the function; (4) the consequences of not requiring performance of the function; (5) the work

7

experience of past incumbents of the position; and (6) the current work experience of incumbents in similar jobs." Keith v. Cnty. of Oakland, 703 F.3d 918, 925 (6th Cir. 2013) (citing 29 C.F.R. § 1630.2(n)(3)). But because of the sometimes ever changing nature of the workplace, the Sixth Circuit has repeatedly instructed that "[w]hether a job function is essential is a question of fact that is typically not suitable for resolution on a motion for summary judgment." Id. (citing Kiphart v. Saturn Corp., 251 F.3d 573, 585 (6th Cir. 2001)). This case is no exception.

According to Alfa's "judgment," working in the office (as opposed to working remotely) was an essential function of Brownlow's position as an "inside claims appraiser." (Doc. No. 43 at 9–15). Although Alfa admits that nothing in the written job description requires inside claims appraisers to work in the office (see Doc. No. 43 at 11), Brownlow's supervisor, Andy Polston, testified that having inside appraisers work together and "lean on" each other in the office leads to "better judgment calls and . . . a better estimate." (Doc. No. 44-8 (Polston Dep.) at 45:1–16). Polston further testified that having face-to-face interactions with other internal claims appraisers was sometimes a "necessary" part of the job, and that allowing inside adjusters to work remotely would cause communication issues and technological difficulties. (Id. at 168:5–17; 171:12–173:25). Other Alfa employees reiterated these concerns, and further testified that Brownlow was unable to maintain the same production quantity as his coworkers who worked in the office. (See Doc. Nos. 44-1 (Ladd Dep.) at 121:13–22; 44-10 (Turner Dep.) at 61:14–62:13, 73:14–22). Moreover, Ladd informed Brownlow in writing that his position was never considered a "work from home" position, (Doc. No. 44-6 at 11), and even Brownlow admitted that no inside appraiser has ever worked from home on a permanent basis, (see Doc. No. 66 ¶ 10).[4] Viewing these facts in

---

[4] Brownlow admits that Alfa did not allow inside claims adjusters to work remotely even during the global COVID-19 pandemic. (Doc. No. 68 ¶ 5).

8

the light most favorable to Alfa, a jury could agree that working in the office is essential to Brownlow's position, and that he could not perform this essential function while working from home.

Brownlow disagrees and emphasizes other evidence to show that in-person attendance was not an essential function of his job. For example, Polston testified that Brownlow was able to perform his job remotely and that "he was able to excel a bit more" when he worked from home. (Doc. No. 44-8 (Polston Dep.) at 172:3–175:16). But more fundamentally, Alfa's Vice President of Human Resources Mike Turner testified that "Brownlow was never an *inside* claims adjuster. He was always in a position called *outside* claims adjuster." (Doc. No. 44-10 (Turner Dep.) at 29:9–30:8 (emphasis added)). This fact, accepted as true for purposes of summary judgment, would mean that Brownlow's job description as an "Outside Claims Adjuster" (Doc. No. 48-10 at 23–26) was the same as other non-disabled employees who were regularly allowed to work remotely. (See Doc. No. 44-1 (Ladd Dep.) at 66:10–21; 44-9 (Babcock Dep.) at 67:20–68:18). And if other similarly situated employees could perform their jobs remotely, then it would discredit Alfa's argument that working in the office was an essential function of Brownlow's position. Therefore, if a jury accepted these facts at trial it could find that Brownlow was able to perform the essential functions of his job while working from home.

Notwithstanding these numerous factual disputes, both parties also argue that case law in the Sixth Circuit entitles them to judgment as a matter of law. Upon close inspection their cases underscore that an employee's perception of the workplace is critical to gaining an accurate picture of what the actual workplace is like. For example, Alfa cites EEOC v. Ford Motor Co., 782 F.3d 753, 761 (6th Cir. 2015) (en banc) for the proposition that "an employee who does not come to work cannot perform any of his job functions, essential or otherwise." (Doc. No. 43 at 8). But Alfa

9

omits that there are exceptions to this general rule, and that what "[s]eal[ed] the deal" for the Sixth Circuit in Ford Motor Co. was the *employee's admission* that her absences from work made her unable to perform the essential functions of her job as a resale buyer. 782 F.3d at 763. "That's [not] this case." Id. Similar admissions were made in Pinter v. Mich. Mut. Inc., where it was *undisputed* that "travel, face-to-face meetings with clients, an excellent memory, and good communication skills were essential functions of [the employee's] job." No. 3:15-cv-0772, 2018 WL 3632141, at *5 (M.D. Tenn. July 31, 2018) (granting employer's motion for summary judgment on employee's failure-to-accommodate claim because it was undisputed that the employee "did not request an accommodation of any kind before he was terminated"). Nor does the Court find Gamble v. JP Morgan Chase & Co. controlling here because, in that case, there was no indication that either party disputed that "[r]egular attendance was an essential function of Gamble's position at JP Morgan." 689 F. App'x 397, 398 (6th Cir. 2017).

Brownlow's cited cases fare no better. In Hostettler v. College of Wooster, the Sixth Circuit held that summary judgment was inappropriate because "there remain disputes of material fact over whether [plaintiff] was able to achieve all of her job's essential functions" without attending work full-time. 895 F.3d 844, 854–57 (6th Cir. 2018). And in Mosby-Meacham v. Memphis Light, Gas & Water Div., the Sixth Circuit affirmed a jury verdict because the employee "presented sufficient evidence supporting a finding that she could perform all the essential functions of her job remotely for ten weeks." 883 F.3d 595, 604 (6th Cir. 2018). Thus, contrary to Brownlow's arguments, neither Hostettler nor Mosby-Meacham require the Court to grant summary judgment here.

In sum, the Court finds that there are genuine factual disputes about whether working in the office was an essential function of Brownlow's position. Accordingly, the Court will deny

10

summary judgment for both parties on the issue of whether Brownlow was "otherwise qualified" for his position, and it will be up to the jury to resolve this issue based on the admissible evidence and credibility of witnesses at trial.

        2.        Request for a Reasonable Accommodation

The parties also dispute whether Brownlow's request to continue working from home constituted a request for a reasonable accommodation within the meaning of the ADA. A request for an accommodation "is not reasonable if it requires eliminating an 'essential' function of the job." Rorrer, 743 F.3d at 1039 (citing 29 C.F.R. § 1630.2(*o*); 42 U.S.C. § 12111(8)). Given this standard, the same questions of fact that preclude summary judgment on the issue of whether Brownlow was otherwise qualified to perform the essential functions of his job while working remotely, also preclude summary judgment on the issue of whether Brownlow's request for an accommodation was reasonable. See Ford Motor Co., 782 F.3d at 763 (citations, internal quotation marks, and alterations omitted) ("In failure-to-accommodate claims where the employee requests an accommodation that *exempts* her from an essential function, the essential functions and reasonable accommodation analyses run together."). Thus, the jury will also need to determine at trial whether Brownlow's request for an accommodation was in fact reasonable.

        3.        Effect of Brownlow Receiving Long-Term Disability Benefits

Alfa also contends that Brownlow is not a "qualified individual" under the ADA as a threshold matter because, to receive long-term disability benefits under Alfa's insurance policy, Brownlow must have admitted that he was "unable to perform the material and substantial duties of [his] regular occupation." (Doc. No. 43 at 6–7; see also Doc. Nos. 44-12 at 15; 44-6 at 16–17). Thus, Alfa argues, if Brownlow received long-term disability benefits because he was "unable to work *at all*," then he should be estopped from arguing that he could perform the essential functions of his job. (Doc. No. 43 at 6–7).

11

The Court certainly appreciates the logic of this argument, but Alfa has not cited any evidence about whether Alfa's long-term disability insurance policy "consider[s] whether an individual is able to work with *reasonable accommodation* in determining entitlement to disability benefits." See Griffith v. Wal-Mart Stores, Inc., 135 F.3d 376, 380 (6th Cir. 1998) (emphasis added). On this point, the Sixth Circuit has adopted the Seventh Circuit's approach as follows:

> The point here is a simple one: When employees (and/or their physicians) represent that they are 'totally disabled,' 'wholly unable to work,' or some other variant to the same effect, employers and factfinders are entitled to take them at their word; and, such representations are relevant evidence of the extent of a plaintiff's disability, upon which an employer may rely in attempting to establish that an ADA plaintiff is not a 'qualified individual with a disability.' At the same time, because the . . . definition of disability . . . [in] most disability insurance plans . . . differs materially from the ADA's definition of a 'qualified individual with a disability,' these representations are not conclusive as to the ADA issue. When a defendant in an ADA action relies on such representations as the basis for contending that a plaintiff is not a 'qualified individual,' the plaintiff is free to come forward with additional evidence that shows she could perform the essential duties of a desired position with or without reasonable accommodation notwithstanding the fact that she might have been deemed disabled under some other statutory or contractual framework.

Id. (quoting Weigel v. Target Stores, 122 F.3d 461, 467–68 (7th Cir. 1997)). Weigel makes clear that to succeed on this argument on summary judgment and at trial, Alfa will have the burden of production to present evidence that the definition of disability in its long-term disability insurance policy is the same as that in the ADA. At this juncture, Alfa has not done so. And because Brownlow has presented evidence that he could perform the essential functions of his job with a reasonable accommodation, the Court will not grant summary judgment to Alfa solely because Brownlow qualified for long-term benefits under its insurance policy.

C.  ADA Retaliation Claim

In Count III, Brownlow claims that Alfa retaliated against him for exercising his rights under the ADA. (Compl. ¶ 29). The ADA creates a cause of action for individuals who are retaliated against for engaging in activity covered by the statute. Rorrer, 743 F.3d at 1046 (citing

12

42 U.S.C. § 12203(a)). Where, as here, there is no direct evidence of retaliation under the ADA, the familiar McDonnell-Douglas burden-shifting framework applies, and Brownlow must first establish a prima facie case of retaliation by showing that: (1) he engaged in activity protected under the ADA; (2) Alfa knew of that activity; (3) Alfa took an adverse action against him; and (4) there was a causal "but for" connection between the protected activity and the adverse action. Id. (citation omitted).[5]

It is undisputed that Brownlow made ongoing requests to work remotely as an accommodation for his disability, and Sixth Circuit case law suggests that good-faith accommodation requests constitute ADA protected activity regardless of whether they were in fact reasonable. A.C. ex rel. J.C. v. Shelby Cnty. Bd. Of Educ., 711 F.3d 687, 698 (6th Cir. 2013) ("Both this circuit and most others agree that requests for accommodation are protected acts" under the ADA.). Nor is it disputed that Alfa knew of that protected activity. The Court also finds that Brownlow suffered an adverse employment action when Alfa refused to keep his position open, and he may have suffered additional adverse employment actions when Alfa rescinded his accommodation to work from home and required him to take and exhaust FMLA leave.[6]

---

[5] If Brownlow meets this burden, then Alfa "has a burden of *production* to articulate a nondiscriminatory reason for its action." Ford Motor Co., 782 F.3d at 767 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). And if Alfa "meets its burden, [Brownlow] must prove the given reason is pretext for retaliation." Id. (citing Hicks at 515).

[6] The Complaint also alleges that Brownlow engaged in protected activity by requesting a transfer to the Trussville office, and that he suffered an adverse action when Alfa denied that request. (Compl. ¶¶ 29, 31). Although Brownlow appears to have abandoned this allegation, the Court nevertheless clarifies that he cannot establish a prima facie case of ADA retaliation based on this alleged activity because, as a prerequisite to filing a lawsuit under the ADA, an employee must first file a charge with the EEOC within 300 days of the alleged discriminatory conduct, 42 U.S.C. §§ 2000e-5(e)(1); 42 U.S.C. § 12117(a). Because Alfa denied Brownlow's transfer request in early 2016, and Brownlow did not file his EEOC charge until more than 300 days later on December 1,

Again, there are genuine disputes of fact regarding the fourth element, which requires Brownlow to show that his protected activity was a "but-for cause" of Alfa's alleged adverse actions. See Ford Motor Co., 782 F.3d at 767. Based on the evidence in the record, a reasonable jury could find that Brownlow was instructed to take FMLA leave and Alfa refused to keep his position open because he sought reasonable accommodations under the ADA. On the other hand, a reasonable jury presented with that same evidence could find that Brownlow was terminated for his performance issues or abandoned his job because he was not able to attend work on-site. For these reasons, the Court will deny summary judgment for both parties on Brownlow's ADA retaliation claim.[7]

## IV. CONCLUSION

For the foregoing reasons, Alfa's Motion for Summary Judgment (Doc. No. 42) will be granted in part, and Brownlow's Motion for Partial Summary Judgment (Doc. No. 45) will be denied. The Court will dismiss Brownlow's Title VII claims, and Brownlow's remaining ADA claims will proceed to trial.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

2017 (see Doc. No. 1-2), these allegations are time-barred. Moreover, Brownlow does not even mention his transfer request in his EEOC charge. (See Doc. No. 1-2).

[7] Although Brownlow did not address his ADA retaliation claim in response to Alfa's motion for summary judgment, the Court has decided as a discretionary matter not to deem that claim waived because Brownlow addressed it in his own motion for summary judgment and in his reply. See Kondaur Cap. Corp. v. Smith, 802 F. App'x 938, 948 (6th Cir. 2020).